UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TERRY J. HILL** | **CIVIL ACTION** |
| **VERSUS** | **NO:    15-3437** |
| **SOCIAL SECURITY ADMINISTRATION** | **SECTION: "G" (4)** |

## REPORT AND RECOMMENDATION

### I.  Introduction

This is an action for judicial review of a final decision of the Commissioner of Social Security pursuant to Title 42 United States Code § 405(g).  The Commissioner denied the plaintiff's claim for Supplemental Security Income and Disability Insurance Benefits under Title XVI of the Social Security Act, Title 42 United States Code § 1382c.

The matter was referred to the undersigned United States Magistrate Judge pursuant to Title 28 United States Code § 636(b) and Local Rule 19.02E(b) for the submission of Proposed Findings and Recommendations.

### II.  Factual and Procedural Summary

Terry Hill is a sixty-one-year-old man who is 6'3" in height and weigh 343 pounds with two years of college education and past relevant work as a credit analyst. Tr. 30 & 223.  Hill alleges that he became disabled on April 1, 2013, due to high blood pressure, L3-4 lumbar disc disease, cervical and lumbar discectomy, a torn rotator cuff on both hands, and left knee replacement. *See* R. Doc. 9-6; Tr. 200. He complains that despite the surgical procedures he had he continues to experience numbness, tingling in his fingers and difficulty sleeping.  His date last insured is December 31, 2017. Tr. 10.

Hill protectively filed for period of disability and disability insurance benefits under Title II, and supplemental security income under Title XVI of the Social Security Act, on April 23, 2013. *See* Tr. 51. All claims were initially denied on July 9, 2013. Tr. 58-59.

Hill filed a written request for hearing on July 29, 2013. Tr. 78. Joan Deans, the Administrative Law Judge ("ALJ"), held a hearing on January 8, 2014. Tr. 23 *et seq.* The ALJ denied Hill's claims finding that he was not under a disability from April 1, 2013, through February 27, 2014, the date of the opinion. Tr. 18.

Hill contends that the ALJ erred in finding that he was not disabled. R. Doc. 9. First, he contends that the ALJ erred because he failed to properly evaluate Listing Level 1.04(A). *Id.* at p. 8. Second, he contends that the ALJ failed to properly evaluate Listing Level 1.03. *Id.* at p. 10. Third, Hill contends that the functional capacity assessment is incomplete and is not supported by substantial evidence. *Id.* at p. 11. Fourth, he contends that the ALJ failed to properly consider the impact that his pain and fatigue had on his concentration, persistence, and pace. *Id.* at p. 12.

The Commissioner, on the other hand, contends that the ALJ's findings are based upon substantial evidence and must therefore be affirmed. R. Doc. 10. The Commissioner contends that there is substantial evidence to support the ALJ's conclusions regarding listing levels 1.03 and 1.04(A). He also contends that the ALJ's residual functional capacity ("RFC") finding and his conclusions regarding Hill subjective complaints are also based upon substantial evidence. Having set forth the parties' contentions, the Court will now proceed with a review of the administrative record to determine whether the ALJ's finding was based upon substantial evidence.

**III.**      <u>**Findings of the Administrative Law Judge ("ALJ")**</u>

The ALJ held that Hill did not meet the disability requirements. Tr. 18. She further held that there was no evidence that Hill has not engaged in substantial gainful activity. Tr. 12. She further

2

held that Hill has degenerative disc disease, degenerative joint disease, hypertension, and obesity. These impairments were considered severe. Tr. 12.

However, the impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404 Appendix 1, Subpart P, and Regulation No. 4. Tr. 13.  In reaching her conclusion, the ALJ found that the medical evidence does not document listing-level severity and that no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination.   The ALJ found that Hill has the residual functional capacity to perform the full range of sedentary work. Tr. 13. The ALJ also found Hill is capable of performing past relevant work as a collections agent which does not require the performance of work-related activities precluded by Hill's residual functional capacity. Tr. 18.

## IV.     Standard of Judicial Review

### A.     Substantial Evidence

The role of this Court on judicial review under Title 42 U.S.C. § 405(g) is to determine whether there is substantial evidence in the record to support the determination of the fact finder. The Court may not re-weigh the evidence, try issues *de novo* or substitute its judgment for that of the Secretary. *Allen v. Schweitker*, 642 F.2d 799, 800 (5th Cir. 1981).  If supported by substantial evidence, the Secretary's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also Wilkinson v. Schweiker*, 640 F.2d 743, 744 (5th Cir. 1981) (citations omitted).

Substantial evidence is more than a scintilla and less than a preponderance, and is considered relevant such that a reasonable mind might accept it as adequate to support a conclusion.  *See Richardson*, 402 U.S. at 401.  It must do more than create a suspicion of the existence of the fact to be established, but no "substantial evidence" will be found only where there is a "conspicuous

absence of credible choices" or "contrary medical evidence."  *See Payne v. Weinberger*, 480 F.2d 1006, 1007 (5th Cir. 1973); *Hemphill v. Weinberger*, 483 F.2d 1137, 1138 (5th Cir. 1973).

    **B.**    **Listing Level Standard**

The Listing Level criteria are demanding and stringent. *Falco v. Shalala,* 27 F.3d 160, 162 (5th Cir. 1994). The burden of proof rests with a claimant to provide and identify *medical signs and laboratory findings* that support *all* criteria for a Step 3 impairment determination. *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria"). The listings criteria are demanding and stringent. *Falco v. Shalala,* 27 F.3d 160, 162 (5th Cir. 1994). The burden of proof rests with a claimant to provide and identify *medical signs and laboratory findings* that support *all* criteria for a Step 3 impairment determination. *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990) ("For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria"); *Selders v. Sullivan,* 914 F.2d 614, 619 (5th Cir. 1990); *Washington v. Barnhart,* 413 F.Supp.2d 784, 793 (E.D.Tex. 2006); 20 C.F.R. § 416.926(d) (2005). When a claimant fails to sustain that burden, courts must conclude that substantial evidence supports the ALJ's finding that Listings-level impairments are not present. *Selders,* 914 F.2d at 619–620; *Washington,* 413 F.Supp.2d at 793. Importantly for this case, a claimant may not establish Listings level severity through subjective testimony. *See Sullivan v. Zebley,* 493 U.S. at 530; *Selders,* 914 F.2d at 619; *Washington,* 413 F.Supp.2d at 793.

**V.     Analysis**

    **A.     Whether the ALJ properly evaluated Hill's degenerative disc disease under Listing Level 1.04(A)**

Hill contends that the ALJ did not properly evaluate his degenerative disc disease which caused a compromise of the spinal cord nerve root characterized by pain, limited motion of the spine, motor loss accompanied by sensory or reflex loss, and positive testing under Listing 1.04(A). R. Doc. 9.  Hill contends that after he had a knee replacement, his blood pressure spiked and lab test results indicated that he had an infection.  He complains that he experienced cervical radiculopathy neck and left arm pain with persistent triceps weakness and numbness as well decreased range of motion. *Id.*

The Commissioner contends that it is the ALJ's responsibility to determine whether the listing level has been met which means that plaintiff failed to meet his burden of proving otherwise. R. Doc. 10, p. 7. The Commissioner contends that Hill had full muscle strength in his upper extremities and a negative Spurling test indicating that he had no nerve root impingement such that he did not meet the listing level 1.04. *Id.*

A musculoskeletal impairment (such as degenerative disc disease)[1] is severe enough to prevent a person from doing any gainful activity or employment if it results in a compromise of a nerve root (including the cauda equina) or the spinal cord and is accompanied by limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness)

---

[1] Under the listing of impairments, this includes herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, and vertebral fracture. *See* 20 C.F.R. 404 Subpt. P. App. 1 §1.04.

accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). 20 C.F.R. 404 Subpt. P. App. 1 §1.04 (A).

The ALJ determined that examinations after the onset date resulted in negative test results. Specifically, he found that the Spurling test which measures radicular and cervical nerve root pain was negative. Tr. 17.

There is no medical evidence in the record that shows Hill experienced limitation of motion of the spine, motor loss, or muscle weakness accompanied by sensory or reflex loss. Nor is there evidence of lower back involvement that resulted in a positive straight-leg raising test. *Id*.

The Court notes further that Hill in suggesting that there was error by the ALJ only points to medical treatment that occurred in January 2013 while the alleged disability occurred on April 1, 2013. R. Doc. 9, p. 9-10. Therefore, the Court finds that ALJ's decision that Hill's degenerative disc disease did not meet listing level 1.04 is based upon substantial evidence and should be affirmed.

**B.      Whether the ALJ properly evaluated Hill's degenerative disc disease under listing level 1.03.**

Hill next contends that the evidence of gait disturbance from the knee joint over use coupled with a need for multiple surgeries and knee replacement surgery is proof of arthrodesis of a major weight-bearing joint with the inability to ambulate effectively within 12 months of onset. R. Doc. 9, p. 10. Hill therefore contends that there is evidence of dysfunction affecting a major weight-bearing joint without a return to effective ambulation twelve (12) months after onset as defined in 1.00B2b. *Id.* at p. 11. Hill further contends that he remains symptomatic for pain syndrome to the knee with few remaining treatment options such that the criteria found in 1.03 has been satisfied and the ALJ's decision is not based upon substantial evidence. *Id.*

The Commissioner contends that the ALJ's decision that Hill did not meet listing level of 1.03 is based upon substantial evidence. R. Doc. 10, p. 8.  The Commissioner contends that while Hill had the requisite knee replacement surgery, he failed to meet the ineffective ambulation requirement. *Id.*

Listing level 1.03 provides that reconstructive surgery or surgical arthrodesis, of a major weight-bearing joint, with inability to ambulate effectively as defined in 1.00(B)(2)(b) and return to effective ambulation did not occur or is not expected to occur within 12 months of onset. 20 CFR Ch. III Pt. 404, Subpt. P. App. 1 § 1.03.  Loss of function for purposes of 1.03 is defined as the inability to ambulate effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment or inability to perform fine and gross movements effectively on a sustained basis for any reason.  This also includes pain associated with the underlying musculoskeletal impairment.  The inability to ambulate effectively or the inability to perform fine and gross movements effectively must have lasted or be expected to last for at least 12 months. *Id.*

The ALJ noted that on June 5, 2012, Hill had a total left knee replacement before the alleged disability onset date of April 1, 2013.  The ALJ noted that the bone-on-bone was medially and there was bone loss on the tibia with articular cartilage depletion and loss of medial femoral condyle and tibial plateau. Tr. 14. The ALJ noted that according to Dr. Griffith, Hill was having some difficulty with his knee since the June 2012 knee replacement. The ALJ noted that Hill informed Dr. Griffith that he was having trouble sitting for a prolong period and that he was considering early retirement and Dr. Griffith advised him that he had probably reached maximum medical improvement.  He noted that despite Hill's complaints, on examination, the left knee showed full extension and flexion to about 120 degrees.  The ALJ also noted that Hill had stability in the knee and that his patella

tracked well. *Id*. at 15. According to the ALJ, Dr. Griffith opined that Hill retained the ability to engage in less than a full range of sedentary exertion and that he could only lift and carry less than 10 pounds on an occasional basis. *Id.* He noted that Dr. Griffith indicated that Hill could walk less than two hours out of eight, never climb stairs or ramps, never balance, stoop, kneel, crouch, or crawl. The ALJ also noted that Hill's size hinders him along with the pain but that Dr. Griffith did not endorse any limitation in reaching, handling, fingering or feeling. *Id*. at 16.

The ALJ further only gave Dr. Griffith partial weight. *Id.* He also pointed out that after reviewing Hill's treatment notes that they showed no complications with the knee surgery. The ALJ further noted that while Hill complained of pain to Dr. Griffith that he did not indicate that he had difficulty walking and further there was no supportive evidence beyond his subject complaint of pain that indicated severe left knee pain. *Id.* Finally, the ALJ noted that the treatment records did not indicate that Hill had a need for any assistive device to aid in ambulation. *Id.*

The record illustrates that after the disability onset day a letter was written by Dr. Griffith that does not contain any valuation information. It simply indicates that Hill was continuing to have difficulty which consists of his inability to squat or kneel and difficulty sitting for long periods. On October 22, 2013, Dr. Griffith saw Hill and on examination of his lower extremity noted that he had full extension, flexion to about 115 degrees with puffiness and good patellar tracking. The doctor noted that he had little mid-range laxity but it was minimal.

It is important to note that the doctor did not say that he could not ambulate well. He does reference Hill's ability to kneel and squat and flex his knee. Further the record indicates that Hill is able to vacuum, and that he attended the administrative hearing without any assistive device, normal gait, and he never complained about the inability to walk. Tr. 36, 40, 288. There is no evidence in the record which shows that Hill needed an ambulation-assistive device. Further, while

the ALJ did not specifically reference the listing level, his opinion clearly shows that he considered the applicability of Hill's condition and his opinion is based on substantial evidence. The absence of a literal reference to listing 1.03 is at best harmless error.

### C.  Whether the ALJ's Residual Functional Capacity ("RFC") is based upon substantial evidence?

Hill complains that the ALJ's RFC is not based upon substantial evidence because he has upper extremity pain and numbness which made it impossible for him to do the full range of sedentary work. R. Doc. 9, p. 11. Hill contends that the ALJ committed reversible error when assigning RFC because he omitted the expert vocational testimony which indicated that with a lifting restriction of less than 10 pounds that he could no longer work as a collections agent.

He alleges that if the testimony had been included then the ALJ would have included restrictions against lifting items in her analysis and would have addressed the impairment of Hill's fine manipulation which was unresolved with numerous surgeries. R. Doc. 9, p. 12. As a result, Hill seeks reversal or remand for consideration of all of his functional limitations.

The Commissioner contends that the ALJ's finding regarding the RFC's assessment is based upon substantial evidence. Therefore, the Commissioner contends that the RFC decision is based upon substantial evidence.

The ALJ found that Hill had the RFC to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Tr. 18. He further noted that the vocational expert testified that the claimant's relevant past work was at the sedentary level of exertion and skilled. *Id.* He also noted that the vocational expert concluded that Hill's duties fit within the parameters of the current residual functional capacity assessment. *Id.* Additionally, the ALJ found that Hill's treating source endorsed no limitations with the use of his upper extremities.

The record however contradicts the ALJ's conclusion that there was no upper extremity limitation endorsed by Hill's treating source. According to the record, the treating source found that Hill's exertional lifting limitation was that he could occasionally and frequently lift less than 10 pounds. Tr. 294.

Hill now contends that his ability to do his past relevant work as a collections agent was eliminated by the expert vocational response to a lifting restrict of less than 10 pounds. The vocational expert indicated that with the lifting restriction Hill could not return to his past relevant work.

The record further shows that Dr. Craig the state agency consultant concluded that Hill could lift up to 20 pounds occasionally and 10 pounds frequently and had no manipulative limitations. Tr. 56-57. This finding was supported by Hill's testimony that he could lift between 10 to 15 pounds. He further confirmed that he quit working as a collection agent due to a reduction in force and not do to any physical limitation impacting his ability to work. Tr. 30-31, 35.

While the ALJ wrongly noted that the treating source found no limitations and those limitations when applied to the vocational expert's hypothetical would result in a finding that he could not work as a collections agent, Hill's own testimony and the state consultants findings contradict the conclusion. Considering the totality of the evidence, the court finds that the ALJ's decision regarding Hill's RFC is supported by substantial evidence.

**D**.   **Whether the ALJ properly considered the effects of Hill's pain and Fatigue on his concentration, persistence, and pace?**

Hill contends that the ALJ failed to fully evaluate the consistency of statements concerning diminished symptoms of concentration, persistence, and pace as required by 20 CFR 404.1529. Therefore, the ALJ's decision is not based on substantial evidence. R. Doc. 9, p . 12-13.

Concentration, persistence, and pace refer to the claimant's ability to engage in an activity. It further refers to the claimant's ability to sustain the activity for a period of time and at a reasonable pace. 62 Fed. Reg. 6408, 6428 (Feb. 11, 1997). Hill alleges that the ALJ did not consider: (1) documented pain provided hypertension and (2) the fatigue that was reasonably expected from the cervical spine fusion which was not present in the medical notes surrounding the total knee replacement surgery. R. Doc. 9, p. 13.

The Commissioner contends that the ALJ specifically considered and discounted Hill's subjective complaints. R. Doc. 10, p. 10. The ALJ properly considered that the medical findings did not support the existence of disabling pain.

The ALJ found that Hill's alleged impairments and his allegations of pain as a result of the impairments were not credible to the extent alleged. In so doing, the ALJ did an analysis of the treatment history that preceded the onset date as well as the treatment that occurred after the onset date of April 1, 2013. The ALJ noted that Hill's chief complaint in November 2013 was that he experienced neck and back pain and that the pain goes into his right shoulder and arm.

The ALJ noted that he complained of waking up in the morning with arm and hand tingling which subsides as he starts moving. Tr. 15-16. He noted that Hill had restricted range of motion and could flex forward with two fingerbreadths above the sternum and extend back two fingerbreadths above the C7 prominence. *Id*. He noted that Hill felt some pulling in his posterior neck muscles with maneuvers and that the examination was positive for right shoulder impingement with a positive drop-arm test and pain with internal and external rotation of the right shoulder. *Id.* He further noted that Hill acknowledged taking Hydrocodone and Meloxicam for pain and Metoprolol for his high blood pressure. *Id.* at 16.

Title 20 C.F.R. § 404.1529 provides that statements about an individual's symptoms are not sufficient to establish a disabling physical or mental impairment. *See* 20 C.F.R. § 404.1529. However, Social Security Ruling 96-7p provides that statements about symptoms and pain are not rejected solely due to lack of evidence. Such other factors as activities of daily living, medication dosage and side-effects, and treatment and methods of alleviating pain are considered when determining the limiting effects of pain and symptomatology on the ability to work. *See* 20 C.F. R. § 404.1529 (a)-(c).

The record shows that the ALJ considered Hill's alleged pain and physical limitations and found that they were unsupported by the objective medical findings and treatment history through the date last insured. The record shows that while Hill complained of shoulder pain, the physical examination of his upper extremity resulted in a normal motor and neurovascular exam. The medical record further indicated that Hill needed to lose weight, work on his quad, and that as long as his "neck" was not giving him any radiculopathy he needed to leave it alone. Tr. 279.

Hill, according to the records, was diagnosed with hypertension which was noted by the ALJ. However, he was prescribed Metoprolol to treat the condition. Tr. 16. Hill testified that he was diagnosed with obstructive sleep apnea but the doctor did not prescribe continuous positive airway pressure (CPAP) therapy. Tr. 44. The ALJ noted the sleep apnea diagnosis and the record shows that the diagnosis occurred before the onset date. Tr. 13

While Hill contends that he experienced fatigue, he does not point to a location in the record where he was diagnosed with fatigue. The Court notes that the ALJ found that Hill was able to go outside every day, and drive but that he complained of difficulty sitting. The ALJ further noted that ten months after his left knee surgery that Hill's left knee was essentially normal and that he had reach maximum medical improvement. Tr. 15; 274-275.

While Hill contends that pain and fatigue were limiting, the evidence of record does not provide any proof of an impact on Hill's concentration, persistence or pace. The record evidence also shows Hill was able to perform housework, care for himself, and drive his vehicle. (Tr. 17, 28, 37, 40)

After reviewing the record along with the ALJ's opinion, the Court finds that the ALJ's decision not to incorporate the limitation of "extreme fatigue" into the hypothetical was supported by the record because there is no medical evidence in the record of a complaint of fatigue. Further, the ALJ's opinion and his consideration of Hill's pain along with his decision not to incorporate a complaint of fatigue is supported by the record and therefore based upon substantial evidence. The Court further finds that there is no evidence that Hill's concentration or his persistence were impacted by the pain. Finally, the Court notes that glaringly absent from Hill's submission is any reference to the record where he complained to a physician of fatigue, concentration, or persistence problems.

## VI. Recommendation

Accordingly,

It is the **RECOMMENDATION OF THIS COURT** that the ALJ's decision denying Terry Hill's Supplemental Security Income and Disability Insurance Benefits be **AFFIRMED**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[1]

New Orleans, Louisiana, this 12th day of September 2016

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[1] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.